1

2

3

4

5

6

7 # UNITED STATES DISTRICT COURT

8 ## EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  JOSEPH CLARENCE EASTMAN, | Case No.  1:20-cv-01303-BAM (PC) |
| 11  Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO |
| 12  v. | ACTION |
| 13  TUOLUMNE COUNTY JAIL, *et al.*, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR |
| 14  Defendants. | FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE |
| 15 | TO PROSECUTE |
| 16 | (ECF No. 8) |
| 17 | **FOURTEEN (14) DAY DEADLINE** |

18

19 **I.**     **Background**

20        Plaintiff Joseph Clarence Eastman ("Plaintiff") is a county jail inmate proceeding *pro se*

21 and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  This matter was referred

22 to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

23        On October 7, 2020, the Court issued a screening order granting Plaintiff leave to file an

24 amended complaint or a notice of voluntary dismissal within thirty (30) days.  (ECF No. 8.)  The

25 Court expressly warned Plaintiff that the failure to comply with the Court's order would result in

26 a recommendation for dismissal of this action, with prejudice, for failure to obey a court order

27 and for failure to state a claim.  (Id. at 10.)  The deadline has expired, and Plaintiff has failed to

28 file an amended complaint or otherwise communicate with the Court.

1    II.    **Failure to State a Claim**

2         A.    **Screening Requirement**

3         The Court is required to screen complaints brought by prisoners seeking relief against a

4    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

5    § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

6    or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

7    relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C.

8    § 1915(e)(2)(B)(ii).

9         A complaint must contain "a short and plain statement of the claim showing that the

10   pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

11   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12   conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

13   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

14   true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc.,

15   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

16        To survive screening, Plaintiff's claims must be facially plausible, which requires

17   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

18   for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

19   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

20   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

21   plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

22        B.    **Plaintiff's Allegations**

23        Plaintiff is currently housed at Tuolumne County Jail in Sonora, California where the

24   events in the complaint allegedly arose.  Plaintiff names the following defendants: (1) Tuolumne

25   County Jail; (2) Dr. Sun, medical doctor; and (3) Dr. B, unnamed psychiatric doctor.

26        Plaintiff alleges that the Tuolumne County Jail custody staff denied Plaintiff's right to a

27   second opinion and refused his right to adequate medical care and rushing his recovery after

28   surgery.  Plaintiff alleges Dr. Sun neglected proper medical care.

2

1    Plaintiff alleges he has P.T.S.D., anxiety and night errors.  The psychiatrist, Dr. B., video

2    chatted with Plaintiff.  He prescribed "prazosin" or "mini press" for night terrors.  He did not

3    counsel Plaintiff regarding any of the side effects.  On June 23, 2020, Plaintiff woke up to pain in

4    his penis and had an erection.  This was one of many, but this one lasted longer than 12 hours.

5    Plaintiff put in medical requests and when he saw the nurses, they said Plaintiff had to wait for

6    the doctor to arrive as he had limited hours.  When Plaintiff saw the doctor, he said the erection

7    would go down.  Plaintiff asked if it was due to the medication or Plaintiff's prostrate.  Doctor did

8    tests on Plaintiff's prostrate, which turned out fine.

9    Plaintiff saw nurse Debbie who recommended that Plaintiff go to the E.R. at Adventist

10   Health.  Plaintiff went to the hospital.  He was put in a dirty holding cell with a camera on him to

11   make sure he was not touching himself to keep the erection.  Plaintiff was in the holding cell for

12   2.5 hours, which was 44.5 hours with an erection.  He was transported to the E.R. by a deputy and

13   at the hospital, the staff was helpful.  The M.D. at the ER said it was because of the "mini press"

14   medication.  Plaintiff was told that they had to drain some of blood in the penis with a syringe.

15   They tried 2 times without success.

16   Plaintiff was transported to San Jose Regional Medical Center for surgery.  The surgeon,

17   James Hwong, M.D. told Plaintiff that he would most likely never get an erection again naturally.

18   Surgery was performed – debridement and repair and penile shunt – for a total of 53 hours erect,

19   with damage to the tissue in his penis.

20   Plaintiff was transported back to jail, immediately after waking from anesthesia, and

21   placed in a dirty single cell.  Medical staff at the jail examined him and when Plaintiff returned to

22   his single cell, he was bleeding from his penis.

23   A deputy saw the blood and escorted Plaintiff to medical, then to the ER at Adventist

24   Health.  The suture had come apart and the M.D. at the ER repaired the suture.  Plaintiff was

25   transported back to jail.  The bandages were changed, but were stopped and when Plaintiff

26   continued to bleed, the bandages were put back on.

27   The surgeon had said that Plaintiff was to return for follow up 24-48 hours after surgery,

28   but it was not until 3-4 weeks for the jail to take Plaintiff back for his follow up.  Plaintiff has

3

1   been told that he suffers from erectile dysfunction for life.  He as a scar and pain in his penis.

2   Plaintiff alleges he is 37 years old and will have a lifetime of pain and suffering and requests

3   compensatory damages.

4       **C.**    **Discussion**

5       Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to

6   state a cognizable claim under 42 U.S.C. § 1983.

7       **1.**    **Federal Rule of Civil Procedure 8**

8       Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

9   statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

10   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

11   of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678

12   (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a

13   claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

14   at 570).  While factual allegations are accepted as true, legal conclusions are not.  Id.; see also

15   Twombly, 550 U.S. at 556–57.

16       Although Plaintiff's complaint is short, it is not a plain statement of his claims.  As a basic

17   matter, the complaint does not clearly state what happened, when it happened or who was

18   involved.  It is unclear which doctor he is referring to at various times in the complaint and which

19   doctor Plaintiff contends violated his constitutional rights.  It is unclear if he is trying to name

20   individual jail staff or medical personnel at the hospital.

21       **2.**    **Linkage Requirement**

22       The Civil Rights Act under which this action was filed provides:

23       Every person who, under color of [state law] ... subjects, or causes to be subjected,
any citizen of the United States ... to the deprivation of any rights, privileges, or
24       immunities secured by the Constitution ... shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress.

25   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

26   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See

27   Monell v. Dep't of Soc. Servs., 436 U.S. 658; Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth

28

1  Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right,

2  within the meaning of section 1983, if he does an affirmative act, participates in another's

3  affirmative acts or omits to perform an act which he is legally required to do that causes the

4  deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5       Plaintiff's complaint fails to adequately link the defendants to alleged constitutional

6  violation.  The Court cannot determine which of the doctors is Dr. Sun and which doctors

7  allegedly violated his constitutional rights.  Further, to the extent Plaintiff is attempting to name

8  individual jail staff, he must list the individuals as defendants and include allegations of how each

9  person violated Plaintiff's constitutional rights.

10            **3.        Tuolumne County Jail**

11      Defendant names Tuolumne County Jail as a defendant.

12      Under section 1983 a local government unit may not be held responsible for the acts of its

13  employees under a respondeat superior theory of liability.  Monell v. Dep't of Soc. Servs., 436

14  U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it inflicts the

15  injury complained of through a policy or custom.  Waggy v. Spokane Cty. Wash., 594 F.3d 707,

16  713 (9th Cir. 2010).

17      To state a claim, "[i]t is not sufficient for a plaintiff to identify a custom or policy,

18  attributable to the municipality, that caused his injury.  A plaintiff must also demonstrate that the

19  custom or policy was adhered to with 'deliberate indifference' " to his constitutional rights.

20  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016), cert. denied sub nom., Los

21  Angeles Cty., Cal. v. Castro, 137 S. Ct. 831 (2017).  The deliberate indifference standard is

22  satisfied where a plaintiff alleges facts available to the municipality's policymakers that "put

23  them on actual or constructive notice that the particular omission is substantially certain to result

24  in the violation of the constitutional rights of their citizens." Castro, 833 F.3d at 1076.

25      Here, Plaintiff has not linked any alleged violation of his rights to a policy or practice

26  attributable to the Tuolumne County Jail, nor has he provided facts to support that Tuolumne

27  County Jail knew of, and blatantly ignored, the alleged violations committed by its employees.

28  Therefore, Plaintiff has failed to state a cognizable claim against the Tuolumne County Jail.

5

**4.      Eighth Amend Fourteenth Amendments – Medical Care**

It is unclear whether Plaintiff was a pretrial detainee or convicted prisoner during the relevant time period.  To the extent that Plaintiff was a pretrial detainee during the relevant time period, his claims concerning the conditions of his confinement or deprivation of a medical care arise under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("We have said that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (internal quotation marks omitted)).

The Ninth Circuit has held that "the proper standard of review" for claims of inadequate medical care for pretrial detainees is "objective indifference."  Gordon v. Cty. of Orange, 888 F.3d 1118, 1120, 1124–25 (9th Cir. 2018) (extending the "objective deliberate indifference standard" articulated in Castro to inadequate medical care); see also Horton v. City of Santa Maria, 915 F.3d 592, 602 (9th Cir. 2019) (noting that Gordon "recognized that Castro's objective deliberate indifference standard extends to Fourteenth Amendment claims by pretrial detainees for violations of the right to adequate medical care").

Accordingly, in order to state a claim against any defendant for denial of medical care while a pretrial detainee, plaintiff must allege that the defendant: (1) "made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) the "conditions put the plaintiff at substantial risk of suffering serious harm"; (3) the "defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries."  Gordon, 888 F.3d at 1125.

///

Plaintiff alleges that Dr. B prescribed medications which caused prolonged erections. Plaintiff alleges he had multiple prolonged erections but there is no allegation that Dr. B. "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious" or that "by not taking such measures, the defendant caused the plaintiff's injuries."  Plaintiff does not allege Dr. B knew of the side effects to Plaintiff and failed to take reasonable measures to able that risk.

As to Dr. Sun, assuming he is the doctor who Plaintiff saw Plaintiff at the jail before surgery, Plaintiff fails to state a cognizable claims.  When Plaintiff complained about the erection, this doctor did tests on Plaintiff's prostrate, to rule out prostrate medical issue.  Plaintiff does not allege this conduct was objectively unreasonable.  The defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the facts and circumstances of each particular case."  Gordon, 888 F.3d at 1125 (quoting Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).)  " '[M]ere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  Gordon, 888 F.3d at 1125. Therefore, the plaintiff must "prove more than negligence but less than subjective intent— something akin to reckless disregard."  Id.

There is nothing to suggest that any individual defendant made an intentional decision that put Plaintiff at substantial risk for suffering any harm.

### 5.    Doe Defendants

Plaintiff is informed if he does not know the name of Defendant "Dr. B," he may name the defendant as John Doe.  But, the use of John Does in pleading practice is generally disfavored. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008). Plaintiff is hereby advised that the court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe defendant.  Plaintiff will be required to identify him or her with enough information to locate the defendant for service of process.  For service to be successful, the Marshal must be able to identify and locate defendants.  Once the identify of a

1   Doe defendant is ascertained, Plaintiff must file a motion to amend his complaint only to identify

2   the identified Doe defendant so that service by the United States Marshal can be attempted.

3                    **6.      State Law Claims**

4        Plaintiff appears to allege a state law tort claim for medical malpractice.  Under 28 U.S.C.

5   § 1367(a), in any civil action in which the district court has original jurisdiction, the "district

6   courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

7   action within such original jurisdiction that they form part of the same case or controversy under

8   Article III of the United States Constitution," except as provided in subsections (b) and (c).  The

9   Supreme Court has stated that "if the federal claims are dismissed before trial, . . . the state claims

10   should be dismissed as well."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

11       Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff

12   must first have a cognizable claim for relief under federal law.  28 U.S.C. § 1367.  As Plaintiff

13   has not stated a cognizable claim for relief under federal law, it is recommended that the Court

14   decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

15       Further, the Government Claims Act requires exhaustion of Plaintiff's state law tort claims

16   with the California Victim Compensation and Government Claims Board, and Plaintiff is required

17   to specifically allege compliance in his complaint.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th

18   201, 208–09 (Cal. 2007); State v. Superior Court of Kings Cty. (Bodde), 32 Cal. 4th 1234, 1239

19   (Cal. 2004); Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th

20   Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995);

21   Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has

22   failed to allege compliance with the Government Claims Act.

23   **III.    Failure to Prosecute and Failure to Obey a Court Order**

24            **A.      Legal Standard**

25       Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

26   any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

27   within the inherent power of the Court."  District courts have the inherent power to control their

28   dockets and "[i]n the exercise of that power they may impose sanctions including, where

8

1    appropriate, . . . dismissal." Thompson v. Hous. Auth., 782 F.2d 829, 831 (9th Cir. 1986).  A

2    court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

3    failure to obey a court order, or failure to comply with local rules.  See, e.g., Ghazali v. Moran, 46

4    F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet,

5    963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

6    amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987)

7    (dismissal for failure to comply with court order).

8           In determining whether to dismiss an action, the Court must consider several factors:

9    (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

10   docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

11   cases on their merits; and (5) the availability of less drastic sanctions.  Henderson v. Duncan, 779

12   F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

13          **B.    Discussion**

14          Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the

15   Court's orders.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his

16   case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

17          The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a

18   presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.

19   Anderson v. Air W., 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against

20   dismissal because public policy favors disposition on the merits.  Pagtalunan v. Galaza, 291 F.3d

21   639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose

22   responsibility it is to move a case toward disposition on the merits but whose conduct impedes

23   progress in that direction," which is the case here.  In re Phenylpropanolamine (PPA) Products

24   Liability Litigation, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

25          Finally, the Court's warning to a party that failure to obey the court's order will result in

26   dismissal satisfies the "considerations of the alternatives" requirement.  Ferdik, 963 F.2d at 1262;

27   Malone, 833 at 132–33; Henderson, 779 F.2d at 1424.  The Court's October 7, 2020 screening

28   order expressly warned Plaintiff that his failure to file an amended complaint would result in a

1   recommendation of dismissal of this action, with prejudice, for failure to obey a court order and

2   for failure to state a claim.  (ECF No. 8, p. 10.)  Thus, Plaintiff had adequate warning that

3   dismissal could result from his noncompliance.

4          Additionally, at this stage in the proceedings there is little available to the Court that

5   would constitute a satisfactory lesser sanction while protecting the Court from further

6   unnecessary expenditure of its scarce resources.  Plaintiff is proceeding *in forma pauperis* in this

7   action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is

8   likely to have no effect given that Plaintiff has ceased litigating his case.

9   **IV.    Conclusion and Recommendation**

10          Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

11   district judge to this action.

12          Further, the Court finds that dismissal is the appropriate sanction and HEREBY

13   RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim

14   pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to

15   prosecute this action.

16          These Findings and Recommendation will be submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

18   **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

19   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

20   Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

21   specified time may result in the waiver of the "right to challenge the magistrate's factual

22   findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v.

23   Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

24   IT IS SO ORDERED.

25   Dated:   **November 19, 2020**          /s/ *Barbara A. McAuliffe*

26                                          UNITED STATES MAGISTRATE JUDGE

27

28